## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| **JOSEPH ELLIOTT, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 2016-0074** |
| ) | |
| **UNITED STATES VIRGIN ISLANDS** ) | |
| **BUREAU OF CORRECTIONS (BOC);** ) | |
| **RICK MULLGRAV, BOC DIRECTOR,** ) | |
| **SHELLEY DEWESE, CLASSIFICATION** ) | |
| **SUPERVISOR OF BOC, INDIVIDUALLY** ) | |
| **AND IN THEIR OFFICIAL CAPACITIES,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**Appearances:**
**Joseph Elliott, Jr.**
     *Pro Se*

## MEMORANDUM OPINION

**Lewis, Senior District Judge**

THIS MATTER comes before the Court on Magistrate Judge George W. Cannon's Report and Recommendation ("R&R") (Dkt. No. 3), in which the Magistrate Judge recommends that the Court dismiss Plaintiff Joseph Elliott, Jr.'s ("Plaintiff") Complaint (Dkt. No. 1). For the reasons that follow the Court will adopt in part and reject in part Magistrate Judge Cannon's R&R. Specifically, the Court will (1) dismiss with prejudice Plaintiff's employment and due process transfer claims for failure to state a claim; (2) dismiss without prejudice Plaintiff's claims as to denial of phone access, General Education Development ("G.E.D.") instruction, and re-entry programs, as well as his claim to being housed in a "very hostile environment," for failure to state

a claim; and (3) allow Plaintiff's claims regarding the cutting of his hair, lack of access to Virgin Islands laws, lack of access to the law library, and retaliatory transfer to proceed.

## I. BACKGROUND

Plaintiff alleges as follows: Plaintiff was housed at Citrus County Detention Facility in Lecanto, Florida beginning on June 17, 2011. (Dkt. No. 1 at ¶ 8). On January 25, 2016, Plaintiff was transferred from Citrus County Detention Facility to Red Onion State Prison in Pound, Virginia. *Id*. at ¶ 11. Plaintiff was not informed as to why the transfer was occurring, did not receive a "due process hearing," and was not given "a notice or an opportunity to present evidence and facts" prior to being transferred. *Id*. at ¶ 11-12. Red Onion State Prison is a "super maximum institution." *Id*. at ¶ 13. Plaintiff wore his hair in dreadlocks, and upon arrival at Red Onion State Prison, was found to be in violation of facility grooming policies prohibiting inmates from having long hair. *Id*. As a result, Plaintiff was "lockdown in segregation" and informed he would have to cut his hair to be allowed back into the general population of the prison. *Id*. Following "a week of duress from the administration," Plaintiff cut his hair to avoid any disciplinary reports, out of concern for their potential effect on his qualification for parole, which was "a few months" away. *Id* at ¶ 14. At the time of his transfer, there were no resources on Virgin Islands law available to Plaintiff at Red Onion State Prison. *Id*. at ¶ 18. Further, as of the filing of the Complaint, Plaintiff was not able to access the law library, to receive G.E.D. instruction, to participate in a re-entry program designed to prepare him to go before the parole board, or to secure employment while at Red Onion State Prison. *Id*. at 4-5. Plaintiff states that overall, he "had much better opportunities and was able to have visits from his family who resides in Florida" prior to his transfer. *Id*. at ¶ 24. Since being transferred, Plaintiff, who has been classified as a "non-violent offender," claims that he is in a "very hostile environment to [*sic*] which he is in constant fear for his life." *Id*. at ¶ 26.

On February 15, 2016,[1] Plaintiff wrote to Defendant Mullgrav ("Mullgrav"), Director of the Virgin Islands Bureau of Corrections, explaining the "extreme burdensome conditions at the Supermax prison." *Id*. at ¶ 15, Exhibit B. Mullgrav did not respond. *Id*. On April 16, 2016, Plaintiff submitted an Offender Request form to his treatment program supervisor asking for identification of the proper person with whom to raise the issue of his transfer. *Id*. at ¶ 25, Exhibit C. On April 20, 2016, Plaintiff received a response directing him to contact Defendant Shelley Deweese ("Deweese"), Classification Supervisor of the Bureau of Corrections. *Id*. On May 17, 2016, Plaintiff filed an informal complaint with the Virginia Department of Corrections stating that on May 12, 2016 and May 17, 2016 he was denied use of a phone, rendering him unable to contact his family regarding submission of documents to the parole board on his behalf. *Id*. at ¶ 16, Exhibit A. On May 31, 2016, Plaintiff received a response noting that his counselor had "completed all of her duties as required" and that Plaintiff would "need to contact the Virgin Islands" with any questions about parole hearings. *Id*. at Exhibit A.

On May 20, 2016,[2] Plaintiff signed a letter addressed to the Virgin Islands Bureau of Corrections Grievance Coordinator describing his grievance against the Bureau of Corrections Classification Authorities, whose alleged "arbitrary decision making" resulted in: his placement at Red Onion State Prison; being forced to cut his hair against his religious beliefs; and his lack of access to legal resources. *Id*. at ¶ 27, Exhibit D. On May 31, 2016, Defendant Deweese wrote to Plaintiff stating the reason for his transfer; that the V.I. code was being ordered; and that Plaintiff

---

[1] Plaintiff identifies this letter as being written on "February 2, 2016," but the cited exhibit is dated February 15, 2016.

[2] Plaintiff identifies this letter as being filed on May 16, 2016. While this is the date on the letter's heading, it is signed May 20, 2016.

would need to submit a request through his case manager for a security reduction level. *Id*. at ¶¶ 28-29, Exhibit E. Plaintiff was not satisfied with this response. *Id*. at ¶ 29.

On June 5, 2016, Plaintiff filed a Regular Grievance form with the Virginia Department of Corrections, noting that the response to his informal complaint dated May 31, 2016 did not resolve his issue as to why he was denied phone access, and requesting a treatment program plan to prepare for his upcoming parole hearing. *Id*. at Exhibit A. On June 7, 2016, the Virginia Department of Corrections rejected this Grievance form, checking a box indicating that Plaintiff had not used the informal process to resolve his complaint. *Id*. at Exhibit A.

On June 10, 2016, Plaintiff wrote a letter to Mildred Trotter, Warden of the Virgin Islands Bureau of Corrections, appealing his grievance and stating that the response he had received from Defendant Deweese on May 31, 2016 (*id*. at Exhibit E) had not resolved his issues. *Id*. at Exhibit D. On June 21, 2016, Plaintiff filed an informal complaint with the Red Onion State Prison Grievance Coordinator asserting that his "constitutional right to procedural protection" was violated, as "no due process hearing was conducted by the [Citrus County Detention Facility] and V.I. officials" prior to his transfer from Citrus County Detention Facility to Red Onion State Prison. *Id*. at ¶ 31, Exhibit F. On July 5, 2016, Plaintiff received a response that his grievance appeal was denied, as he had "received a[n] appropriate due process hearing at [Red Onion State Prison]." *Id*. On July 7, 2016, Plaintiff filed a Regular Grievance form, noting that the response he received on July 5, 2016 did not resolve his issues. *Id*. at ¶ 32, Exhibit F. On July 11, 2016, Plaintiff received a response that his grievance was denied, noting that it had been more than 30 days since the date of the original incident; that the applicable filing period had expired; and that insufficient information was provided. *Id*. at ¶ 33, Exhibit F.  Plaintiff then appealed this grievance to the

Regional Ombudsman. *Id*. at ¶ 34, Exhibit F. On July 20, 2016, Plaintiff received a response saying that his Appeal Grievance had been denied by the Ombudsman. *Id*.

Following this, on October 31, 2016, Plaintiff filed the Complaint in this matter. *Id*. In the Complaint he alleges that he was denied access to Virgin Islands laws in violation of his First Amendment right to access the courts (*id*. at ¶ 18); that his transfer to Red Onion State Prison without notice or hearing violated his Fifth and Fourteenth Amendment rights (*id*. at ¶ 36); that he was forced to cut his hair in violation of his First Amendment right to religious freedom as a Rastafarian (*id*. at ¶ 13); that his transfer was done in retaliation for "exercising his rights to address the court" in violation of his First, Eighth, and Fourteenth Amendment rights (*id*. at ¶ 37); that the transfer to a higher security prison impacted his qualification for parole and meaningful access to the courts in violation of his First, Fifth, and Fourteenth Amendment rights (*id*. at ¶ 38); and that he was denied access to the prison law library in violation of his First Amendment right to access the courts (*id*. at ¶ 18, Exhibit D). Plaintiff further alleges that he was denied phone access, which impacted his qualification for parole (*id*. at ¶ 16); G.E.D. instruction (*id*. at ¶ 21); re-entry programs designed to prepare him for parole hearings (*id*. at ¶ 22); and employment opportunities (*id*. at ¶ 23). Plaintiff also notes in the Complaint that by being housed with violent offenders, he has been placed in a "very hostile environment" in which he "is in constant fear for his life." *Id*. at ¶ 26.

Pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(a), this Complaint went before Magistrate Judge George W. Cannon, Jr.  for initial screening. Magistrate Judge Cannon recommended dismissal of the Complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1) and failure to exhaust administrative remedies prior to initiating the instant action pursuant to 42 U.S.C. § 1997e(a). *Id.* at 7. The Magistrate Judge recommended dismissing the Complaint as to Plaintiff's claims regarding his transfer to Red Onion State Prison

as "[i]nmates have no constitutionally protected liberty interest in being housed at a particular facility." *Id*. (citing *Dominguez v. Governor of Pennsylvania*, 574 F. App'x 63, 65 n.1 (3d Cir. 2014)). Magistrate Judge Cannon further recommended dismissal of Plaintiff's other claims for failure to exhaust administrative remedies prior to filing the complaint—specifically, Plaintiff's claims regarding: the cutting of his hair, lack of phone access, lack of access to Virgin Islands laws, lack of access to the law library, lack of G.E.D. instruction, lack of re-entry program, lack of employment opportunity, and exposure to a hostile environment. *Id*. at 5. Plaintiff did not file an objection to the R&R.

## II.    APPLICABLE LEGAL PRINCIPLES

### A.  Standard of Review

A party may make "specific written objections" to a magistrate judge's report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1) ("Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."). The objections must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis of such objection." LRCi 72.3.

When reviewing a report and recommendation, a district judge must review de novo "any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). The Supreme Court has instructed that, although 28 U.S.C. § 636 does not require the judge to conduct a *de novo* review if no objections are filed, the statute "does not

6

preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). Accordingly, the Third Circuit has held that, even in the absence of objections to a report and recommendation, a district court should "afford some level of review to dispositive legal issues raised by the report." *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)). The Third Circuit has described this level of review as "reasoned consideration." *Equal Emp. Opportunity Comm'n*, 866 F.3d at 100.

The Advisory Committee Notes to the 1983 Amendments to Rule 72(b) of the Federal Rules of Civil Procedure state: "[W]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Some district courts have also adopted a "clear error" or "manifest injustice" standard for the review of those portions of a report and recommendation that are not contested. *Massie v. Finley*, No. 1:19-CV-01201, 2021 WL 11108887, at *1 (M.D. Pa. June 2, 2021) (quoting 1983 Advisory Committee Notes that the court is only required to "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); *Cruz v. Chater*, 990 F. Supp. 375, 377 (M.D. Pa. 1998) (noting that court's review is limited to ascertaining whether there is "clear error on the face of the record"); *see also Pratt v. Marsh*, No. 19-CV-00416, 2021 WL 2188576, at *8 (E.D. Pa. May 28, 2021), *aff'd sub nom. Pratt v. Superintendent Benner Twp. SCI*, No. 21-2328, 2023 WL 5607516 (3d Cir. Aug. 30, 2023) (internal citations omitted) ("Uncontested portions of a report and recommendation, as well as portions to which untimely or general objections are made . . . at the very least . . . should be reviewed for clear error or manifest injustice."). In passing, a panel of the Third Circuit has appeared to accept this standard. *See Seamon v. Shapiro*, No. 24-1451, 2025 WL 88837, at *2 (3d Cir. Jan. 14, 2025) ("The District Judge appropriately conducted

a narrow review of the Magistrate Judge's report and recommendation for clear error or manifest injustice, because Seamon did not file objections to the report.").

### B. Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a)

The Prison Litigation Reform Act ("PLRA"), as incorporated in 28 U.S.C. § 1915A, requires a court to screen complaints in civil actions in which a prisoner seeks redress against a governmental employee or entity, and to *sua sponte* dismiss any claim that is "frivolous, malicious, . . . fails to state a claim upon which relief may be granted[,] or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). Further, courts are required to dismiss *in forma pauperis* proceedings upon a determination at any point that any of these same grounds exist. 28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Ransome v. Anhalt*, 2022 WL 964003, at *1 (3d Cir. Mar. 30, 2022). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Neitzke*, 490 U.S. at 327. A claim lacks an arguable basis in fact when district judges exercise their "unusual power to pierce the veil of the complaint's factual allegations and [conclude that the] factual contentions are clearly baseless . . . [such as] claims describing fantastic or delusional scenarios." *Id*. at 327-328. "A complaint is malicious when it 'duplicates allegations of another [ ]federal lawsuit by the same plaintiff.'" *Daley v. United States Dist. Court*, 629 F. Supp. 2d 357, 359-60 (D. Del. 2009) (alteration in original) (quoting *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993)). *See also Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (stating "'Malicious' in [the context of sections 1915(e) and 1915A(b)] . . . is more usefully construed as intended to harass" (citations omitted)).

Whether a complaint fails to state a claim pursuant to either 28 U.S.C. § 1915(e)(2)(B)(ii) or 1915A(b)(1) is governed by the same standard as whether a complaint fails to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). The Third Circuit follows the analysis set forth by the Supreme Court in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* when considering a Rule 12(b)(6) motion:

> [A] court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679; *see also Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). The test for sufficiency of a civil rights claim faced with a 12(b)(6) motion is "whether the complaint alleges sufficient facts so as to preclude a determination that the complaint is frivolous and whether sufficient facts are pleaded so as to provide a defendant with enough information so that an answer may be framed." *Dist. Council 47, AFSCME v. Bradley*, 795 F.2d 310, 314 (3d Cir. 1986).

"Under Section 1983, a plaintiff must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008). Of particular relevance to the instant matter, "in order to obtain relief under § 1983 for violation of a constitutional right, the right at issue must be clearly identified." *Freeman v. Gov't of the V.I.*, 2014 U.S. Dist. LEXIS 129298, at *5 (D.V.I. Sept. 16, 2014) (citing *Baker v. McCollan*, 443 U.S. 137, 139-40 (1979)).

Procedurally, the PLRA contains an administrative exhaustion requirement: "No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("Compliance with prison grievance procedures [] is all that is required by the PLRA to 'properly exhaust'"). The Supreme Court has held that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Nonetheless, a complaint may be dismissed if an affirmative defense, such as failure to exhaust, appears on the face of the complaint. *Rowann v. Coleman*, 481 F. App'x 44, 46 n.3 (3d Cir. 2012) (affirming a District Court's *sua sponte* dismissal without prejudice of a civil-rights suit brought by a *pro se* litigant in custody, as "it would have been impossible for [plaintiff] to have exhausted his administrative remedies under the [PLRA] before pursuing legal action, as he complained of incidents taking place on September 7 but filed suit a week later.").

### III.    DISCUSSION

#### A.  Claim regarding transfer between prison facilities

Magistrate Judge Cannon recommends that the Court dismiss Plaintiff's claims pertaining to his transfer to Red Onion State Prison for failure to state a cognizable claim under 42 U.S.C. § 1983, as "[i]nmates have no constitutionally protected liberty interest in being housed at a particular facility." (Dkt. No. 3 at 7 citing *Dominguez v. Governor of Pennsylvania*, 574 F. App'x

63, 65 n.1 (3d Cir. 2014)). However, Plaintiff makes two claims regarding his transfer: (1) that he was deprived of his due process rights in being transferred without prior notice or hearing and (2) that his transfer was "a form of unconstitutional punishment for exercising his rights [*sic*] to address the court months prior to his transfer." (Dkt. No. 1 at ¶¶ 36-37). While it is true that Plaintiff has no constitutionally protected liberty interest in being incarcerated in any particular prison, retaliation for the exercise of a constitutional right is itself a cognizable First Amendment claim. *Wilkerson v. Samuels*, 524 F. App'x 776, 778 (3d Cir. 2013) (holding that while plaintiff "has no constitutional right to his job, and no constitutionally protected liberty interest in being incarcerated in any particular prison, retaliation for the exercise of his constitutional right is itself a violation of the Constitution.").

Plaintiff's right to address the court is undisputedly protected by the Constitution. *See e.g.*, *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition."); *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997) ("[A]n individual's constitutional right of access to court is protected by the First Amendment's clause granting the right to petition the government for grievances."). Thus, while Plaintiff's claim that he has suffered a due process violation for the transfer itself must be dismissed with prejudice for failure to state a claim, his allegation that he was transferred as retaliation states a cognizable claim, and will therefore be allowed to proceed.

### B. Exhaustion of Administrative Remedies

As for Plaintiff's other claims, Magistrate Judge Cannon concludes that they "appear to not have been the subject of a grievance or not followed through the entire grievance procedure." (Dkt. No. 3 at 6). In a footnote, the Magistrate Judge notes that the Virginia Department of Corrections' prisoner grievance procedures are described in several cases, and include "up to three

levels of review." *Id*. at 5 n. 5. Accordingly, Magistrate Judge Cannon determined that the remaining claims must be dismissed for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a). *Id*. at 7.

As discussed above, Plaintiff has engaged extensively with various corrections offices and officials in an attempt to address his grievances. It is true that not every complaint or grievance form which Plaintiff filed outlined every one of his claims. However, each claim was raised at least once, if not multiple times, in Plaintiff's pursuit of administrative redress. (*See* Dkt. No. 1 at Exhibit A) (discussing Plaintiff's lack of phone access); *Id*. at Exhibit B (discussing Plaintiff's claims regarding the cutting of his hair, lack of G.E.D. instruction, lack of re-entry program, lack of employment opportunities, and fear for his life); *Id*. at Exhibit D (discussing Plaintiff's claims regarding the cutting of his hair, lack of access to Virgin Islands legal resources, and lack of access to the law library). Within the extensive correspondence in which Plaintiff engaged with the Virginia and Virgin Islands Bureaus of Corrections, he frequently referenced previously filed forms and letters, reiterating his claims by incorporation. (*See e.g.* Dkt No. 1 at Exhibits A, D, F).

As Magistrate Judge Cannon notes, failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to specially plead or demonstrate exhaustion in their complaints. (Dkt. No. 3 at 4 citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). *See also Sorokaput v. Fare,* No. 21-2188, 2022 WL 3043154, at *2 (3d Cir. Aug. 2, 2022) ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints.") (*quoting* Jones at 549 U.S. 216) (citing *Small v. Camden County*, 728 F.3d 265, 268 (3d Cir. 2013) ("Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff.")). A district court "should generally not raise *sua sponte* the affirmative defense

of failure to exhaust" but may do so "if the defense is apparent from the face of the complaint." (Dkt. No. 3 at 4); *Rowann v. Coleman*, 481 F. App'x 44, 46 n.3 (3d Cir. 2012).

In *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002), the Third Circuit held that failure to exhaust was not apparent from the face of the complaint when Plaintiff alleged that the grievance process had been completed under a caption entitled "Exhaustion of Administrative Remedies"; stated in his complaint that "Plaintiff did exhaust administrative remedies by exhausting the appeal process for all misconduct mentioned in the complaint"; and attached copies of the misconduct charges which formed the bases of Plaintiff's retaliation claims, and which Plaintiff had administratively appealed. *Ray*, 285 F.3d at 297. The Third Circuit held further that the complaint could not be ruled deficient under the PLRA for failure to "plead[] exhaustion with particularity" as this would create an additional pleading requirement, contrary to the Supreme Court's mandate to narrowly interpret statutory language so as to avoid heightened pleading standards. *Id.* (citing *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (finding that "it is impossible to square the 'heightened pleading standard' applied in this case [for § 1983 claims] with the liberal system of 'notice pleading' set up by the Federal Rules.")).

In the present matter, Plaintiff has addressed exhaustion of his administrative remedies in a more detailed manner than that found sufficient for the plaintiff in *Ray*. Under a caption entitled "Exhaution [*sic*] of legal remedies[,]" Plaintiff described the administrative process in which he engaged, which included complaints to the Virgin Islands Bureau of Corrections, Virginia Bureau of Corrections, Red Onion State Prison, and letters written to various individual officials, along with multiple appeals of the responses he received from each. (Dkt. No. 1 at 6-7). In addition, he attached thirteen pages of exhibits representing this correspondence. (Dkt. No. 1 at Exhibit A-F). Taken together, the Court cannot conclude that it is apparent from the face of the Complaint that

13

Plaintiff has failed to exhaust his administrative remedies. Accordingly, Plaintiff's claims as to denial of employment, a hearing prior to transfer, phone access, G.E.D instruction, and re-entry programs, as well as his claims regarding being housed in a "very hostile environment," the cutting of his hair, lack of access to Virgin Islands laws, and lack of access to the law library will not be dismissed for failure to exhaust under 42 U.S.C. § 1997e.

### C.  Employment Claim

Examined through the lens of 28 U.S.C. §§ 1915(e)(2) and 1915A, Plaintiff's allegation regarding lack of employment opportunities must be dismissed with prejudice for failure to state a claim. Prisoners have no fundamental right to a job. *See e.g. Rhodes v. Chapman*, 452 U.S. 337, 348, 2400 (1981); *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017); *Gorrell v. Yost*, 509 F. App'x 114, 118 (3d Cir. 2013); *Wilkerson v. Samuels*, 524 F. App'x 776, 778 (3d Cir. 2013). Therefore, Plaintiff's claim regarding denial of employment—specifically, that since being transferred to Red Onion State Penitentiary, "he has been unable to work due to the high security level at that facility[,]" will be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. (Dkt. No. 1 at ¶ 23, Exhibit B ("Here a[t] Red Onion Prison there [are] no . . . jobs. There is a long waiting list of hundreds of prisoners to get jobs.")).

### D. Sufficiency of Pleading

While Plaintiff brings this action under 28 U.S.C. § 1983, he fails to identify a specific constitutional violation giving rise to many of his claims. (Dkt. No. 1 at 1).  28 U.S.C. § 1983 does not create substantive rights in and of itself, but is instead "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Therefore, "[t]he first inquiry in any § 1983 suit is to isolate the precise constitutional violation with which [the defendant] is charged." *Graham*, 490 U.S. at 394

14

(internal quotations omitted). This Court has previously held that when a plaintiff identifies actions taken by a state employee, and brings suit simply alleging that these actions "constitute[] violations of Plaintiff's civil rights under § 1983," the plaintiff has "not state[d] a plausible claim for relief in accordance with the dictates of *Iqbal* and *Twombly*." *Freeman*, LEXIS 129298, at \*5.

Without knowing the nature of their alleged wrongdoing, it would be incredibly difficult, if not impossible, for Defendants to properly answer this complaint. In Plaintiff's claims as to denial of phone access, G.E.D. instruction, and re-entry programs designed to prepare him for parole hearings, as well as his claim to being housed in a "very hostile environment," he does not identify a constitutionally protected right that has been violated.

The only legal basis Plaintiff provides for these claims is his broad statement at the beginning of the Complaint that "[t]his is a civil action authorized by 42 U.S.C. Section 1983 to redress the Deprivation under color of State Law, or rights secured by the Constitution of the United States." *Id*. at 1. This is in sharp contrast to Plaintiff's claims pertaining to the cutting of his hair, lack of access to Virgin Islands laws, lack of access to the law library, and retaliatory transfer, for which he specifically identifies the Constitutional Amendments which provide him with the rights he alleges are being violated. (*See e.g.,* Dkt. No. 1 at ¶ 14 ("Plaintiff Elliott, Jr. was forced to cut his dreadlock[s] in violation of First Amendment right to Freedom of Religion"); *Id*. at ¶ 37 ("Defendant Deweese is retaliating against Plaintiff unlawfully in violation of Plaintiff's rights under the First (1st), Eight[th] (8th), and Fourteenth (14th) Amendments [.]")).Therefore, Plaintiff's claims as to denial of phone access, G.E.D. instruction, and re-entry programs designed to prepare him for parole hearings, as well as his claim to being housed in a "very hostile

environment," will be dismissed without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.[3]

## IV.    CONCLUSION

For the reasons stated above the Court will adopt in part and reject in part Magistrate Judge Cannon's R&R. Specifically, the Court will dismiss with prejudice Plaintiff's employment and due process transfer claims for failure to state a claim. Further, the Court will dismiss without prejudice Plaintiff's claims as to denial of phone access, G.E.D. instruction, and re-entry programs, as well as his claim to being housed in a "very hostile environment" for failure to state a claim. And finally, the Court will allow Plaintiff's claims regarding the cutting of his hair, lack of access to Virgin Islands laws, lack of access to the law library, and transfer as retaliation to proceed.

An appropriate Order accompanies this Memorandum Opinion.

Date:   April 4, 2025                                _____/s/_____
                                                     WILMA A. LEWIS
                                                     Senior District Judge

---

[3] The Court also notes that on August 29, 2024, Plaintiff filed a Proposed Order "To Show Cause for An [*sic*] Preliminary Injunction." (Dkt. No. 44). As this proposed order was not accompanied by a motion, it will not be considered by the Court.